## SECOR *a.* STURGIS.

*Supreme Court, First District; General Term, June,* 1855.

### DIVISIBILITY OF ACTIONS.—DISTINCT ACCOUNTS.

The plaintiffs carried on two distinct branches of business, in distinct apartments, employing different clerks in each, and keeping distinct accounts. The defendants dealt with them in both branches of business, but the plaintiffs kept separate accounts with them, in each branch, and sent in separate bills for the amounts due.—*Held,* that the two accounts constituted distinct causes of action; and a recovery upon one formed no bar to a suit upon the other.

## Appeal from a judgment.

an act of the Legislature of this State, entitled " An act to enable the Common Council of the City of New York to take testimony in matters referred for investigation or inquiry," passed Feb. 9, 1855, requiring the said William Mackellar, Timothy Webster, and Michael McCann, each and severally, to show cause before one of the Justices of this Court, why an attachment should not issue against each of them, pursuant to the statute in such case made and provided, they having been duly subpœnaed, and having attended before a Committee of the Board of Aldermen, and refused to answer certain questions propounded to them by said Committee, or any questions the Committee might ask them.

Now, therefore, on filing said petition and the papers thereto annexed, and after hearing Messrs. A. Nash and W. C. Noyes, in support of the prayer of said petition, and Messrs. Burchard and Brady in opposition thereto, and mature deliberation being had thereon,

It is ordered that the attachment issue, unless the said William Mackellar, Timothy Webster, and Michael McCann, the witnesses mentioned in said petition, appear severally, at the next meeting of the said Committee of said Board of Aldermen, upon receiving one day's notice from the Chairman of the said Committee, of the time and place of holding its meeting or sittings, and answer the questions mentioned in the depositions annexed to said petition, except the two questions asked the witness Webster; and the third question asked the witness McCann; and also testify and give evidence respecting the matters embraced by the resolution, a copy of which is annexed to said petition, passed by the said Board of Aldermen, on the 26th day of April, 1855, authorizing said Committee to investigate all frauds and corruptions in every branch of the Police Department; and, also, the manner in which the same is and has been conducted.

On the continuance of the examination, in September, 1855, the witnesses still declined to answer, and an application for an attachment, pursuant to the tenor of Judge Daly's opinion, was made. It then appeared, however, that the order made by Judge Daly had been served upon the witnesses only by delivering to them a printed copy; the original signature of the judge to the order not having been exhibited to them. Therefore the application was denied.

See also page 156 *post.*

This was an action on a bond. The facts on which it arose are stated in the opinion of the court.

*A. F. Smith*, for appellant.

*S. J. Tilden*, for respondents.

MITCHELL, J.—The plaintiffs are engaged in two different kinds of business, one as ship-chandlers, furnishing stores to ships, the other as ship-carpenters, repairing ships. They do the one business on one floor of their store, the other on another floor, and keep separate accounts of each business, and in this case rendered to the captain who ordered the stores and the repairs one bill for the stores, and another for the repairs; the bill for the stores being $521 15, that for the repairs $139 32. The stores were ordered from one clerk of the plaintiffs, and the repairs from another. The plaintiffs first attached the vessel under our State law for the stores, and afterwards libelled her in the United States Court for the repairs. Two of the defendants gave bonds so as to discharge the vessel from the libel, and admitted the liability for the repairs, in the action in the United States Court, and allowed judgment for them; and after that, being sued in this action on the bond given by them to discharge the vessel from the domestic attachment for the stores, plead the recovery in the United States Court as a bar to this action; insisting that the two bills constituted but one cause of action, and that the plaintiffs had split up that cause, and by doing so had lost all that they did not recover in the United States Court. The attachment for the stores was on the 20th December, 1849, the libel for repairs on the 29th of that month. The defendants, on the 28th of that month, got the domestic attachment discharged, and on the same day executed their bonds, conditioned to pay the amount of all such claims and demands as had been exhibited, and which should be established to have been subsisting liens on the vessel.

These defendants are liable if the condition of that bond is not complied with—that is, if they do not pay all the amount of such claims as had been exhibited, and which are established to have been subsisting liens on the vessel; that is,

Secor *a*. Sturgis.

liens subsisting at the time the claim was exhibited. It is not pretended that the plaintiff had not a good claim and a valid lien when he exhibited his claim; and if so, by the condition of the bond the defendants are bound to pay it. The defendants entered into this bond on the 28th December; that severed the claim under it from the other claim of the plaintiff—and if it had not that effect, still the action commenced the next day for the rest of the plaintiff's demand, could not affect or discharge the special contract made by the defendants to pay this claim, if established to have been a subsisting lien. If the two claims were in fact but parts of one contract, the defendants could have plead in the second suit the prior attachment in the State court in abatement or bar of the second. Was not the allowing of judgment to pass in the second suit an admission of record that it was for a different cause of action from that in the first attachment? If not, still the defendants can only defend themselves by complying with the condition of their bond, or on showing equitable grounds for relief by applying to the equity of the court.

The question discussed before us, however, was principally as to what constitutes such a single cause of action, that if part be sued for, the rest cannot be afterwards recovered.

In Smith *v*. Jones, (15 *Johns*., 229), three barrels of potatoes had been sold at one time :—the court said there was no pretence that they were sold at different times or in different parcels, but that it appeared to be an entire contract for the whole quantity; and they accordingly held that the plaintiff could not split the claim into several causes of action. Their language seems to imply that if the sales had been at separate times, or by separate contracts, he might have had separate suits.

In Farrington *v*. Payne, (*Ib*., 432), the defendants had under an attachment wrongfully taken three bed-quilts and at the same time a bed : they were sued, and a recovery had against them for taking the bed-quilts; and to another action for the bed, they pleaded the recovery (since issue joined in this last cause) in the former suit, and that both actions were for the same act and subject matter. The court held that the seizure of the bed and bed-quilts was one *single indivisible act*, and

that the plaintiff ought not to be permitted to vex the defendant by splitting up his claim; and said,—" Suppose a trespass as to a thousand barrels of flour, would it not be outrageous to allow a separate action for each barrel?" Here the defendant had done but one act.

In Phillips v. Berish, (16 *Johns.*, 136), the plaintiff recovered judgment against the defendant in one action on counts for work and labor and goods sold and materials found on 8th March, 1817; he afterwards sued the defendant for work and labor done before that day. The Common Pleas gave judgment for the defendant; but the Supreme Court reversed their judgment, and Chief Justice Spenser, delivering the opinion of the court, laid down principles which seem easy of application. He said the plaintiff could not sustain two actions when his demand consisted of a claim indivisible in its nature; as, for the tortious taking of several articles at *the same time* and by *one act*, or for the sale of several articles at the same time. But in this case it might be that the work for which the action was brought, was an entirely disconnected and distinct piece of service from the other, or performed under, or grew out of, a distinct contract; that the test is the issue joined; viz., whether the *promises* were the same in the two actions; and that the plaintiff might show that this claim had not been submitted to the former jury, and was a distinct transaction *not so identified with the former as to render it an entire contract, incapable of subdivision.* But there is no case or *dictum* which requires the party to join in one action *several* and *distinct causes of action.*

If, then, the last claim is not so identified with the former as to render it an *entire contract incapable of subdivision*, there may be separate actions. In this case the contracts were made with two different clerks, attending to two distinct branches of business, in two distinct apartments, and keeping distinct accounts; and the bills were rendered separately. These constituted two different transactions and two distinct contracts; and were easily capable of division, and were, in fact, divided from the beginning.

In Miller v. Covert, (1 *Wend.*, 487), the defendant had sold to the plaintiff three tons of hay, under one contract to deliver

Secor *a.* Sturgis.

that number to him. He afterwards sued the plaintiff, and declared for only one ton, 19 cwt., not being able to prove the delivery of the rest; the court held that suit conclusive on him, and that he could not claim a set-off for the rest of the three tons, because the sale was by one *single indivisible contract.*

In Guernsey *v.* Carver, (8 *Wend.*, 492), the plaintiff had *one* account against the defendant consisting of twenty different articles of merchandise delivered on fourteen different days, and amounting to between $5 and $6. The court said the only safe rule is to compel the plaintiff, on *an account like the present,* to include the whole of it then due in a single suit, and held a recovery for part a bar to a suit for the rest. There, all the claim was for goods sold, one class of actions only—not for goods sold and work done,—and on a running account. Such a claim is properly considered but one cause of action ; it is so *understood* by both parties to it, and when the understanding of the parties can be ascertained, that is their contract. The decision does not affect any case where the claim is not all included in one account, nor where part of the claim is for goods sold, and another part for work done, or another for money lent. Yet the same principle would apply, as appears by subsequent cases, if it were shown that it was the understanding of both parties that all their various items should be entered into one account, and be settled as one bill.

In Colvin *v.* Corwin (15 *Wend.*, 557), the plaintiff was sued in two actions, for different lottery tickets sold to him by the defendant, by two different agents, at two different times, and at two different lottery offices occupied by them. The justice gave judgment against him in both actions, he having plead to the second the recovery in the first. The Common Pleas reversed the judgment, and that reversal was affirmed by the Supreme Court, who said, " the splitting up of small demands to *multiply suits* is strongly discountenanced by this court." Here the claim was but for one class of actions, namely, tickets sold, and the court considered the contract one, as they intimate on account of the smallness of the demands, and so indivisible, but more properly on account of the probable intention of the parties.

In Stevens *v.* Lockwood (18 *Wend.*, 644), the defendant had been sued in a Justice's Court, for several items, all entered in one account-book of the defendant, to the order of the plaintiff, as follows:—

|  |  |  |
|---|---|---:|
| 1828.—Balance on note with Atwood, | . | $   44 |
| "       Rent of house, | . . . . | 48 00 |
| "       Rent of house, | . . . . | 9 00 |
| "       Fixing bedstead, | . . . . | 50 |
| "       Ride to Granville, | . . . . | 25 |
| "       One day's work, | . . . . | 1 25 |
| "       Wood, 98 feet, | . . . . | 1 77 |
| *July*, 1829.—Lot of fowls, | . . . . . | 8 00 |
| "       ¾ bbl. soap, | . . . . | 3 25 |

And other items, making a total of $123 46. On the debit side of the same account were 23 items charged by the defendant against the plaintiff, amounting to $104 36; all of which the plaintiff admitted, except $45. That cause was tried before a justice, and before it was submitted, the plaintiff withdrew the two items for the fowls and the soap, so that the verdict should not exceed the jurisdiction of the justice. Then the plaintiff brought this suit for the fowls and the soap, and the justice and the Common Pleas found in his favor, but the Supreme Court reversed the judgment.

The plaintiff having withdrawn these two items after the proof *was received* in relation to them, so as to give the justice jurisdiction over the claim, thereby lost all right to recover for them. But the Supreme Court put their decision on the ground that this, although not a merchant's account, was a *continuous account*, and in the meaning of the preceding cases indivisible; italicizing the words continuous account. The court (it may be assumed) inferred that such was the understanding of the parties that the account between them was to be considered as but one continuous account, and whenever that understanding may be inferred there can be but one recovery. The inference was fair in that case; and it would be equally fair to infer in this case as to any of the items, in either of the two accounts, that they could not be picked out from the account to which they belonged and be made grounds

for additional actions; but it cannot be inferred that the parties in this case understood or intended that there should be but one account of both classes of articles. There the acts of the parties had made their dealings and accounts one—here their acts have made their dealings and accounts distinct, and to consist of two parts.

In Bendernagle *v.* Cocks (19 *Wend.*, 207), Judge Cowen, after a long examination of cases, explains at last the principle on which an account of various items, at various dates, may be considered one. He quotes the language of Lord Ellenborough, who said, in Young *v.* Mumby, (4 *Maule & S.*, 183), "the injury from the dilapidation of the house is one thing, that from the dilapidation of the chancel is another," and then says, "it is true the same thing may be said in respect to different branches of the same contract, but here the parties *have tied them together, and made them one, by their agreement.* This is a safe test. If the parties have tied the accounts, or contracts, or covenants together, and made them one, by their agreement, they cannot seyer them—if they have kept them separate, and not by their acts made them one, the courts cannot compel them to make one of them. In that case the court held, that if a plaintiff has several causes of action for breaches of covenant in a lease, and sues for some of them only, that bars a recovery in another action for the rest of the breaches*—reversing the judgment of the Common Pleas.

In the same case the learned judge has quoted, with approbation, a remark made, in fact, in relation to inferior courts,— that if causes *may* be joined in one action, they *must* be;— but he afterwards qualified it, and said, "In one view, and taken literally, these books may seem to go too far; but although they speak of several contracts, they evidently mean separate demands growing out of one general contract, or a course of dealing, or account current between the parties." If he had said demands, or an account current, consisting originally of separate items, but forming one general contract, by *the course of dealing*, or agreement, or understanding of the parties, would he not have expressed the true rule, and the one which he afterwards applied to the case then before him,

---

* See also Coggins *v.* Bulwinkle, 1 E. D. Smith's C P. R.

when he said, "the parties have tied the separate parts together and made them one by their agreement?"

With great deference to the Supreme Court, it may be doubted whether the decision of the Common Pleas, in this last case, was not more in accordance with authority and principle than the decision of the higher court, especially as the pleadings showed, not that the former action was for other *breaches* merely of the same covenant on which this action was brought, but that the covenants themselves, on which the two actions were brought, were distinct and different, although in one indenture. As the plea, however, in this case, was only in abatement, on account of the pendency of the other action, and not in bar, and the plaintiff could probably amend in his first action, no injustice may have been done. All the subsequent cases admit the authority of Phillips *v.* Berrick, (16 *Johns.* 136), and the correctness of the position there laid down, and profess, and are intended to be consistent with these positions. They all are reconciled, by holding that where there is one continuous account, kept by the parties as one, it shall be considered as making but one contract, by the agreement of the parties; or where articles of the same kind are sold at different times, and by different agents of the same seller, and even at different places, and separate accounts are not understood or shown to be kept, the court will consider the contract as one, if no contrary intent appear; but that under other circumstances, if the claims are distinct, arising at different times, and not so identified with each other as to render them one entire contract incapable of subdivision, they may be separately sued. The rule against the splitting of actions, and the extension of it to a continuous account, are introduced with a view to do justice between the parties. A greater injustice would be done by excluding one of two several accounts, both due to the same plaintiff, merely because one had been sued on, than by leaving a defendant, who, on the record, unquestionably owes both debts, to pay the costs, the most of which are occasioned by his neglect to pay his just debts. A bank or an individual owing one hundred dollars, or one hundred bills or notes, may be sued on each bill or note, and the court could only compel a consolidation of the

suits; it would not be pretended that one suit was a bar to any subsequent one. The reason is, that the courts cannot discover any dealing or agreement of the parties to make the liabilities one. When such agreement cannot be certainly inferred, the parties should be left to their several actions.

By the strict rules of the common law, claims for work and labor, and for goods sold and delivered, could not be joined in one count. Although the more modern rules allowed them to be joined, it was considered a deviation from correct pleading, and those rules did not *require* them to be joined. When two claims are of such a nature that by strict pleading they ought to be sued for in separate counts, it cannot be said they make but one cause of action. The case of Stevens *v.* Lockwood (13 *Wend.*, 644), where the account was for rent, and work, and goods sold, and a *balance due on a note* is consistent with this rule, on the ground that there the parties had, by their implied agreement, made the whole account one contract. On no other ground can that case be sustained; for there part of the plaintiff's claim was for a balance due on a note; and clearly, he could not on any other ground lose that claim, when he sued for work and labor and goods sold.

The judgment for the plaintiff is affirmed, with costs.